THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GERALD FREEMAN, a/k/a Jerry Freeman, Defendant-Appellant.

First District (2nd Division)    No. 80-1598

Opinion filed March 9, 1982.—Rehearing denied April 13, 1982.

James J. Doherty, Public Defender, of Chicago (Mary T. Woodward, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Michele A. Grimaldi, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

Defendant, Gerald Freeman, was charged in a six-count information with armed robbery, burglary and four counts of aggravated battery. (Ill. Rev. Stat. 1977, ch. 38, pars. 18—2, 19—1, 12—4.) Following a jury trial, defendant was found guilty of all charges and was sentenced to serve concurrent extended terms of 40 years for armed robbery, 14 years for burglary and 10 years for aggravated battery. Defendant appeals, contending that he was denied a fair trial when the trial court permitted the State to ask the complainant to identify defendant's co-defendant, Ronald Ross, who had pleaded guilty after the jury had been impaneled but before trial commenced. For the reasons which follow, we affirm defendant's convictions and the sentence imposed for armed robbery, vacate the sentences for burglary and aggravated battery and remand for resentencing in accordance with *People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520.

After the jury was selected but before trial began, defendant's co-defendant, Ronald Ross, withdrew his plea of not guilty and entered a plea of guilty. This occurred outside the presence of the jury. The plea was accepted and the matter was continued for sentencing. Prior to opening statements the trial court admonished the jury:

> "You will not, as I previously talked about, concern yourselves with the guilt or innocence of Mr. Ronald Ross. You will only concern yourselves with the guilt or innocence, by the standards which you heretofore have, as to Gerald Freeman, and Mr. Gerald Freeman alone."[1]

The morning after opening statements were given, defense counsel moved to dismiss the jury on the grounds of prejudice. Counsel argued that since the jury had been selected with the understanding that two defendants were to be tried they would assume, upon seeing only one in

---

[1] The record does not reflect whether this admonishment had been given earlier.

court, that the other had pleaded guilty. After argument, the court denied this motion noting that the jury had no knowledge that Ross had pleaded guilty.

The complainant, Jerry Crider, a 64-year-old shoe repairman, testified that on February 14, 1979, at approximately 4 p.m., he was attacked by Ronald Ross, whom he had known for 20 to 25 years, and defendant, whom he thought he had seen before but did not know personally. Crider identified defendant. Over defense objection the State was allowed to bring Ross into open court where, in the presence of the jury, Crider identified him as the second offender.

Crider testified that Ross pushed him from behind as Crider was returning to his store after buying some groceries. Crider was forced to the back of his store where he had his living quarters. Defendant threw Crider down on the kitchen floor, rifled through his pockets and took the $10 to $15 he had. Defendant then took his lit cigarette and burned Crider on his forehead, his hands, his stomach and his left foot near his ankle. Defendant kept demanding that Crider tell him where he hid the rest of his money. Each time Crider denied having any more money, defendant would burn him again with his cigarette.

Defendant removed Crider's shoes, balled up some newspaper, lit it and applied the flaming newspaper to Crider's left foot where he had already burned him with the cigarette. After the newspaper burned out, defendant relit it and held it two to three inches from Crider's right foot, continually asking him where the money was hidden. Defendant threatened to kill Crider and "burn this place down." Crider was in so much pain he told defendant, "Go ahead and kill me." Crider tried to pull his foot back but was too afraid to resist.

Ten to twelve minutes after Crider first entered the store with his assailants he passed out from the pain of being burned. When he regained consciousness, he was alone. Because of his injuries Crider, who did not have a telephone, was unable to obtain any help for five days during which time he had nothing to eat or drink except a can of fruit cocktail. All the groceries he bought on February 14 had been taken from the apartment.

Ultimately, on Monday, February 19, Crider forced himself up on his damaged feet, struggled to the door of his store and attracted a neighbor's attention. The neighbor called the police who interviewed Crider at the store and then transported him to the hospital. The officer who responded observed burns on Crider's forehead, stomach and both hands and feet. Crider told the officer that "Leftee [Ross] and the Freeman boy" "who hangs in front of the 418 [a liquor store]" had robbed him.

While he was in the hospital Crider viewed three different photographic arrays and identified both Ross and defendant. Defendant was

arrested on March 23, 1979, after he unsuccessfully attempted to flee from the police on a traffic offense.

Crider was hospitalized for four weeks. He suffered first and second degree burns to his forehead, forearms and abdomen, and third degree burns to his feet. Surgical debridement (the removal of dead tissue and contaminated material) and skin grafts were necessary to treat Crider's feet which, like his abdomen, were left permanently scarred. Following his discharge from the hospital, Crider was required to spend an additional two weeks recovering in a convalescent home. Crider was left permanently disabled. At trial he testified that his right foot was still sore and that he could not walk even one block without stopping to rest his feet. The defendant did not testify and offered no witnesses.

Defendant contends that he was denied a fair trial when the trial court allowed the State to ask the complainant to identify defendant's co-defendant, Ronald Ross, who had pleaded guilty after the jury had been selected but before trial began. The People respond that the complainant's in-court identification of Ross as the second offender was neither inadmissible nor prejudicial.

In support of his contention, defendant relies principally upon *People v. Rezek* (1954), 4 Ill. 2d 164, 122 N.E.2d 272. In *Rezek* defendant was indicted with three others for armed robbery but was tried separately. Three witnesses to the robbery were able to identify the others but did not recognize Rezek. The prosecutor had the others "paraded" before the jury for the witnesses to identify. A fourth witness, who was able to identify Rezek, also identified the other three co-defendants. The supreme court found this identification testimony irrelevant and prejudicial:

> "We can think of no relevancy of this testimony on the question of the guilt of this defendant. The identifying of the three codefendants as participants in the robbery certainly had no weight in determining whether the defendant had likewise participated therein. It was well calculated to prejudice the defendant in the eyes of the jury." 4 Ill. 2d 164, 168-69.

Contrary to defendant's representations *Rezek* did not decide that all in-court identifications of co-defendants not on trial are irrelevant (see *People v. Keagle* (1955), 7 Ill. 2d 408, 415, 131 N.E.2d 74), nor did *Rezek* hold that such identification testimony is invariably prejudicial.

In *People v. McNeil* (1972), 52 Ill. 2d 409, 288 N.E.2d 464, the State was allowed to bring a co-defendant, who had pleaded guilty prior to defendant's trial, into the courtroom and caused him to be identified as one of the robbers by one of the victims to the robbery. Commenting on its earlier opinion in *Rezek*, the court stated:

> "It is true that the fact a witness has accurately identified A as a participant in an occurrence has no direct bearing upon the

accuracy of his identification of B as a participant in the same occurrence. But in some circumstances that fact may tend to indicate that the witness is an accurate observer, and thus be admissible by way of corroboration. The question would then be whether the corroborative value is outweighed by the prejudicial effect." 52 Ill. 2d 409, 417.

The court found that the proof of guilt was so strong that the admission of this evidence could not have affected the result. 52 Ill. 2d 409, 417.

In the present case we believe that the complainant's in-court identification of Ross had little, if any, bearing on whether he was an accurate observer. We reach this conclusion because of the complainant's testimony that he had known Ross "quite well" and had seen him "almost everyday" for "twenty or twenty-five years" since Ross was a child. In light of the witness' familiarity with Ross, his ability to identify him in court had virtually no relevance to his ability to identify defendant, who he might have seen before the crime but did not know personally. We cannot agree with defendant, however, that Crider's identification of Ross "would have falsely created the impression in the minds of the jury that if Crider so easily identified Ross then his identification of Freeman must have been just as credible and reliable." It would have been obvious to the jury that Crider's ability to identify Ross was based at least in part on factors which had no bearing on Crider's ability to identify defendant. Defense counsel argued these matters to the jury.

An in-court identification of a co-defendant not on trial is not prejudicial per se. (McNeil; People v. Keagle (1955), 7 Ill. 2d 408, 415, 131 N.E.2d 74.) In Rezek the in-court identification of defendant's co-defendants was only one of two grounds on which defendant's conviction was reversed. The court specifically commented that "if either of the * * * errors existed separately we would not be inclined to reverse the judgment." (4 Ill. 2d 164, 170.) Here defendant alleges no other errors. Unlike Rezek, where three co-defendants were "paraded" before the jury to be identified by four witnesses, three of whom were unable to identify the defendant on trial, only one co-defendant was presented to the jury in the instant case and he was identified by a witness who had already identified the defendant.

Defendant, however, contends that the potential for prejudice was exacerbated in this case by the fact that the jury which convicted defendant was selected with the understanding that two defendants were to be tried. Once it appeared that only one defendant was to be tried, "* * * the only conclusion the jury could have drawn was that Ross had pled guilty to the charges against him and left Freeman to go to trial alone."

■■ This argument is wholly speculative. The jury was never informed of Ross' plea. As far as the jury knew, Ross might have elected to waive a jury trial and agreed to be tried by the court at a later date. Even if the jury assumed that Ross had pleaded guilty, we fail to perceive how this assumption necessarily would have prejudiced defendant. The jury may well have believed that Ross had pleaded guilty because he was in fact guilty and that defendant was insisting upon a trial because he was not. In light of the victim's positive identification of defendant and the trial court's admonishment to the jury before opening statements that they were to concern themselves only with the guilt or innocence of Gerald Freeman, not Ronald Ross,[2] we find no prejudice in the procedure of which defendant complains.

■■ Although not raised as an issue on appeal, we note that the trial court sentenced defendant to serve extended terms of imprisonment on each of his convictions. Under *People v. Evans* (1981), 87 Ill. 2d 77, 87, 429 N.E.2d 520, an extended sentence may be imposed only for the most serious offense of which the offender is convicted. Defendant was convicted and sentenced to serve extended terms of 40 years for armed robbery, a Class X offense, 14 years for burglary, a Class 2 felony, and 10 years for burglary, a Class 2 felony, and 10 years for aggravated battery, a Class 3 felony. Under *Evans* the extended sentences for burglary and aggravated battery are illegal and must be vacated. This cause, therefore, must be remanded for resentencing on those convictions. This does not affect the legality of the extended sentence for armed robbery.

For the foregoing reasons the judgments of defendant's convictions are affirmed, the sentences imposed thereon are affirmed in part and vacated in part and the cause is remanded to the trial court for resentencing consistent with the views expressed herein.

Convictions affirmed; sentences affirmed in part and vacated in part; cause remanded for resentencing.

DOWNING and HARTMAN, JJ., concur.

---

[2] At the conference on instructions defense counsel declined the court's invitation to submit an instruction that the jury was "only to consider evidence against Gerald Freeman."