Gerald **FREEMAN**, Petitioner–Appellee,

v.

Michael P. **LANE**, Respondent–Appellant.

No. 90–2480.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 24, 1991.

Decided May 1, 1992.

Thomas Peters (argued), Chicago, Ill., for petitioner-appellee.

Neil F. Hartigan, Atty. Gen., Bradley P. Halloran (argued), Office of the Atty. Gen., Terence M. Madsen, Asst. Atty. Gen., Office of the Atty. Gen., Criminal Appeals Div., Chicago, Ill., for respondent-appellant.

Before WOOD, Jr.,* and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

RIPPLE, Circuit Judge.

Gerald Freeman petitioned the district court for a writ of habeas corpus for his release from state custody. He based his petition on a violation of his Fifth Amendment right to remain silent at trial and on a Sixth Amendment claim of ineffective assistance of counsel. Mr. Freeman alleged that his appellate counsel on direct appeal failed to raise a Fifth Amendment violation resulting from the prosecutors' indirect reference at trial to his failure to testify. The district court granted the petition. For the following reasons we affirm.

## I

## BACKGROUND

### A. *The Trial*

The State of Illinois charged Gerald Freeman and Ronald Ross with armed robbery, burglary, and aggravated battery in connection with the robbery of Jerry Crider. Ross pleaded guilty to all charges, leaving Mr. Freeman to be tried alone. At trial, Mr. Crider was the only occurrence witness for the state.[1] He testified that, on February 14, 1979, two men entered the shoe shop where he lived and worked and proceeded to rob him, burn his forehead, stomach, and ankle with a cigarette, and burn his foot with a lighted newspaper. The state also presented the testimony of several officers who detailed the investigation of the crime and the arrest of Freeman and Ross. Mr. Freeman did not call any witnesses. His defense was mistaken identity.

Mr. Crider initially spoke to the police a few days after the crime. He identified one of the two men as "Ross," whom he had known for some twenty years. The

record is ambiguous as to whether Mr. Crider was able to identify the second assailant by name. He identified him as a black male taller than himself. However, after viewing two different photo arrays of potential suspects, Mr. Crider did identify Mr. Freeman. Counsel for Mr. Freeman pointed out at trial that his client was the only person to appear in both arrays.

Mr. Freeman's petition for habeas corpus focuses on the prosecutors' closing argument. Almost immediately after beginning her closing, a prosecutor told the jury that "[i]t is unrebutted and uncontradicted that two men forced their way into Jerry Crider's shoe store. It is unrebutted and uncontradicted that he was robbed and tortured by those men." Tr. at 397. Mr. Freeman's counsel objected to these remarks. The court overruled the objection, stating that the jury had heard the evidence. The prosecutor continued, "[i]t is unrebutted and uncontradicted that one of these two men was Ronald Ross" and "[i]t is also unrebutted and uncontradicted, ladies and gentlemen, that the other man was Gerald Freeman." Tr. at 398. After Mr. Freeman's counsel gave his closing argument, a different prosecutor gave a rebuttal argument and elaborated upon the earlier theme. The prosecutor reminded the jury that what the attorneys say is not evidence and that only defense counsel had contradicted Mr. Crider's positive identification of Mr. Freeman. The prosecutor repeated, "there is no evidence which has contradicted that positive identification. And although the Defense lawyers want you to believe that the Defendant was somewhere else when Mr. Crider was being robbed and tortured, there is no evidence the Defendant was anywhere else." Tr. at 426. Counsel again objected, but was overruled for the same reason as before. The prosecutor also told the jury that Mr. Freeman had a right to call witnesses if he

---

\* Judge Wood assumed senior status on January 16, 1992, which was after oral argument in this case.

1. The district court found that Mr. Freeman's co-defendant Ross, who was present at the crime, was unavailable to testify. *United States ex rel. Freeman v. Lane*, No. 89 C 4642, 1990 WL 70558 at \*n. 2. At oral argument counsel for both sides were questioned about Ross' availability and they also indicated that Ross was unavailable. Therefore, in analyzing this case we shall accept counsels' characterization of the facts as true.

desired. Furthermore, the jurors were told that the testimony concerning Mr. Crider's "excellent opportunity to observe [Mr. Freeman] is not contradicted by any other evidence in the case. You've only the statements of the Defense lawyer to contradict it. And that's not evidence." Tr. at 435. Similarly, the prosecutor reminded the jury that "there is no challenge to [Crider's] ability to observe," Tr. at 436, and "there has been no challenge to Mr. Crider's memory." Tr. at 441. The prosecutor concluded by stating that all of the evidence presented by the state was "uncontradicted and unrebutted." Tr. at 443–44.

### B. *Post–Trial Proceedings*

The jury convicted Mr. Freeman of armed robbery, burglary, and aggravated battery, and the court sentenced him to forty years' imprisonment. After his conviction, Mr. Freeman moved for a new trial alleging, among other things, that the prosecutors' repeated references to the uncontradicted state of the evidence were also references to Mr. Freeman's exercise of his right to remain silent, which violated the rights guaranteed him by the Fifth and Fourteenth Amendments to the United States Constitution. The court denied this motion.

On his direct appeal to the Illinois Appellate Court, new counsel represented Mr. Freeman and did not raise the Fifth Amendment issue. Instead, counsel based the appeal on the sole ground that Mr. Freeman was denied a fair trial when the court permitted the state to bring Mr. Ross into the courtroom to be identified by Mr. Crider. The appellate court ruled that no prejudice resulted from that procedure and affirmed the conviction. *See People v. Freeman,* 104 Ill.App.3d 980, 60 Ill.Dec. 736, 433 N.E.2d 974 (1982). The Illinois Supreme Court denied leave to appeal.

Proceeding with different appellate counsel, Mr. Freeman sought post-conviction relief in Illinois trial court. In his post-conviction petition, Mr. Freeman raised the Fifth Amendment issue that his original appellate counsel had failed to argue on direct appeal. To this he added an additional claim that counsel's failure to raise the Fifth Amendment issue denied him effective assistance of counsel. The trial court disagreed and granted the state's motion to dismiss, holding that there was no Fifth Amendment violation in Mr. Freeman's trial and that the attorney's failure to raise the issue did not constitute a denial of effective assistance of appellate counsel. In an unreported order, the Illinois Appellate Court affirmed the dismissal of the post-conviction petition, holding that the prosecutors' references to the state's case as uncontradicted were not an unconstitutional reference to defendant's failure to testify, and therefore that counsel's failure to raise the issue on direct appeal did not demonstrate incompetence. The Illinois Supreme Court denied leave to appeal.

### C. *District Court Proceeding*

Having exhausted his state remedies, Mr. Freeman petitioned the district court for a writ of habeas corpus. Mr. Freeman repeated the arguments that he made in his state post-conviction proceeding. The district court held that, under the interpretations of the Fifth Amendment articulated by this court, the prosecutors did indeed violate Mr. Freeman's Fifth Amendment rights by referring to the uncontradicted state of the evidence. The court reasoned that, because Mr. Freeman was the only witness who could have satisfactorily rebutted Mr. Crider's identification or contradicted the state's evidence, under our decision in *United States ex rel. Burke v. Greer,* 756 F.2d 1295, 1301 (7th Cir.1985), the prosecutor "intended his remarks to be an indirect comment on Freeman's failure to testify" and consequently violated the Constitution. *United States ex rel. Freeman v. Lane,* No. 89 C 4642, 1990 WL 70558 at *4 (N.D.Ill. May 16, 1990).

The district court then evaluated Mr. Freeman's claim of ineffective assistance of counsel under the two-part analysis set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The court found that the first prong of the *Strickland* standard was

present in this case. Given the clarity of the Fifth Amendment violation under this court's decisions and the unsettled state of Illinois law on the question, counsel's failure to raise this issue on appeal was "unreasonable and deficient appellate performance." *Freeman*, 1990 WL 70558 at *5. The court also found that Mr. Freeman was prejudiced by this failure because, under the Supremacy Clause, the Illinois state courts were required to apply the holdings of this court and find that Mr. Freeman's rights were violated. *Id.* The district court was of the view that the state's submission was inadequate to raise the issue of harmless error. Nevertheless, the court held, in the alternative, that the evidence marshalled against Mr. Freeman was not so overwhelming as to render the constitutional violation harmless error. *Id.* at *5–6. Therefore, the court granted the writ. The state filed a timely notice of appeal.

## II

### ANALYSIS

Our review of the district court's decision to issue a writ of habeas corpus is plenary. "A federal district court reviewing a habeas petition must perform its own review ... and we must do the same." *United States ex rel. Partee v. Lane*, 926 F.2d 694, 700 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1230, 117 L.Ed.2d 464 (1992); *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir.1990). In his petition, Mr. Freeman raises two distinct, yet interrelated constitutional claims. First, he argues that the prosecutors' comments in their closing argument violated his Fifth Amendment right to remain silent. Second, he argues that his appellate counsel's failure to raise this issue on appeal denied him the effective assistance of counsel guaranteed by the Sixth Amendment.

### A. *Cause and Prejudice*

Before addressing the merits of Mr. Freeman's Fifth Amendment claim, we pause to examine whether, despite the state's submissions to the contrary, this claim is properly before us. As the district court noted, the parties are agreed that Mr. Freeman has exhausted his state remedies. *Freeman*, 1990 WL 70558 at *2. There remains the question whether his failure to raise his Fifth Amendment claim on direct appeal bars him from raising it on federal habeas.

As we have already noted, this Fifth Amendment claim was presented squarely at Mr. Freeman's criminal trial. However, on direct appeal to the Illinois Appellate Court, appellate counsel neglected to raise the issue and thus prevented that court from passing on it. This failure also prevented Mr. Freeman from also presenting the issue on discretionary review to the Supreme Court of Illinois and the Supreme Court of the United States from the Illinois Appellate Court. Mr. Freeman then presented the issue to the Illinois trial and appellate courts by a petition for post-conviction relief. We must therefore examine two questions: 1) whether the issue was presented properly in the post-conviction proceeding; 2) whether the failure to raise the issue on direct appeal can be excused under the "cause and prejudice" test of *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977).

We are convinced, after a thorough examination of the record, that the issue was properly presented to the Illinois court on collateral review. Because of Illinois' stringent res judicata rule with respect to collateral relief, Mr. Freeman had to demonstrate to the Illinois court that he had not raised the matter on direct appeal because of the ineffective assistance of his appellate counsel.[2] The Illinois Appellate Court considered and rejected both this Sixth Amendment ineffective assistance

---

**2.** *See People v. Frank,* 48 Ill.2d 500, 272 N.E.2d 25, 27 (1971) (the Illinois Post–Conviction Hearing Act "provides a proper vehicle for review of those issues as to which review by direct appeal has been unconstitutionally denied by deprivation of the right to appeal, the right to competent counsel on appeal, or the concept of fundamental fairness."); *People v. Fells,* 188 Ill.App.3d 1086, 136 Ill.Dec. 186, 187, 544 N.E.2d 961, 962 (1989).

claim and the underlying Fifth Amendment claim abandoned earlier on direct appeal. In rejecting the Fifth Amendment claim, the court relied on cases decided by Illinois courts. The court reasoned that, while "the State may not make arguments intended or calculated to draw the jury's attention to the defendant's failure to testify, a prosecutor may argue that the State's case is uncontradicted." *People v. Freeman*, No. 1–86–3492, slip op. at 3 (Ill.App. Ct. Sept. 27, 1988) [175 Ill.App.3d 1158, 139 Ill.Dec. 710, 549 N.E.2d 33 (table) ] (citations omitted). The court continued, "the fact that several references to the uncontradicted nature of the evidence are made, does not establish that the State intended to draw attention to the defendant's failure to testify." *Id.* Indeed, the court observed, "[c]ourts in Illinois have repeatedly held that [when a defendant rests without presenting any witnesses on his behalf], it is proper for the prosecution to point out that the State's case is uncontradicted." *Id.* at 5. The court also rejected Freeman's effective-assistance-of-counsel argument because "it is clear that the defendant would not have prevailed if this [Fifth Amendment] issue had been raised on direct appeal...." *Id.*

After careful and plenary examination of the record, we are satisfied that Mr. Freeman raised squarely both the Fifth and Sixth Amendment claims in the post-conviction proceedings. Therefore, we next turn to whether the earlier failure of appellate counsel to raise the Fifth Amendment claim on direct review can be excused. Here, as we have already noted, we must apply the cause and prejudice test of *Wainwright v. Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506.

■ In *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986), the Court held that ineffective assistance of counsel that violates the Sixth Amendment is cause for ignoring a procedural default. In evaluating an ineffective assistance of counsel claim, we apply the two-pronged analysis first formulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2054,

80 L.Ed.2d 674 (1984). The district court correctly articulated that standard. "In order to establish that appellate counsel's performance was constitutionally defective, Freeman is required to show: (1) that his counsel's appellate performance fell below an objective standard of reasonableness, and (2) that counsel's deficiencies prejudiced the result of the appeal." *Freeman*, 1990 WL 70558 at *3; *see Strickland v. Washington*, 466 U.S. at 687–88, 691–92, 104 S.Ct. at 2064–65, 2066–67. The first, or performance, prong is satisfied by identifying specific "acts or omissions [that] were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. The second, or prejudice, prong requires there to be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. The Supreme Court defined reasonable probability in this context as "a probability sufficient to undermine confidence in the outcome." *Id.* We examine each of these prongs in turn, keeping in mind that the ultimate aim of our inquiry is to determine "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064.

### 1. Performance

■ The district court found counsel's performance objectively unreasonable and deficient because our precedent clearly prohibited the type of comments employed by the prosecution. The district court was also of the view that, while Illinois precedent was not as clear on this issue, an Illinois court may have forbidden this argument if it was intended to highlight the defendant's failure to testify. *Freeman*, 1990 WL 70558 at *5. The state asserts before us, in essence, the same argument that it proffered to the district court: that, under Illinois' interpretations of the Fifth Amendment, the prosecutorial comments were permissible and that therefore counsel's failure to raise the issue was not objectively unreasonable. We cannot ac-

cept this contention, and we agree with the district court that counsel's performance was deficient.

As we shall discuss at greater length later, Mr. Freeman had a meritorious Fifth Amendment argument under our precedent. Before Mr. Freeman took his appeal, this court had decided a number of cases, including *United States v. Fearns*, 501 F.2d 486 (7th Cir.1974), and *United States v. Buege*, 578 F.2d 187 (7th Cir.), *cert. denied*, 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978), which established that the prosecutors' comments violated the Constitution. No reasonable strategic explanation has been given or exists for why counsel would forego this issue on appeal. The record shows that it was by far Mr. Freeman's best argument, perhaps his only one.

2. Prejudice

The district court concluded that Mr. Freeman was prejudiced by counsel's error because, but for the failure to raise the issue, the Illinois Appellate Court would have been required under the Supremacy Clause to follow this court's precedent and find a constitutional violation. *Freeman*, 1990 WL 70558 at *5. The state raises two objections to that holding. First, it argues that the court wrongly interpreted the breadth of the Supremacy Clause, and that a state court is under no obligation to follow the precedent of a lower federal court. Second, it argues that prejudice cannot be established here because an Illinois state appellate court applying state precedent would not have found a constitutional violation in Mr. Freeman's direct appeal. Consequently, for the purposes of the *Strickland* analysis, it cannot be established that there was a reasonable probability that the outcome of the proceedings would have been any different. To buttress this argument the state points out that a panel of the Illinois Appellate Court considered Mr. Freeman's Fifth Amendment argument while ruling on his Sixth Amendment claim in the post-conviction petition. That panel

found that it was clear that Mr. Freeman would not have prevailed on the Fifth Amendment issue if it had been raised on direct appeal. *People v. Freeman*, No. 1–86–3492, slip op. at 5 (Ill.App.Ct. Sept. 27, 1988) [175 Ill.App.3d 1158, 139 Ill.Dec. 710, 549 N.E.2d 33 (table)].

We agree with the state that the Supremacy Clause did not require the Illinois courts to follow Seventh Circuit precedent interpreting the Fifth Amendment. " 'In passing on federal constitutional questions, the state courts and the lower federal courts have the same responsibility and occupy the same position; there is a parallelism but not paramountcy for both sets of courts are governed by the same reviewing authority of the Supreme Court.' " *United States ex rel. Lawrence v. Woods*, 432 F.2d 1072, 1075 (7th Cir.1970) (quoting *State v. Coleman*, 46 N.J. 16, 214 A.2d 393, 402–03 (1965), *cert. denied*, 383 U.S. 950, 86 S.Ct. 1210, 16 L.Ed.2d 212 (1966)), *cert. denied*, 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148 (1971).[3]

We cannot agree, however, that counsel's failure to raise the Fifth Amendment issue did not prejudice Mr. Freeman because he would not have prevailed under state precedents. The standard for evaluating prejudice under *Strickland* is whether, but for counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different. The state's argument that there is no prejudice in this case myopically considers a "proceeding" to be only the first appeal after Mr. Freeman's conviction. However, the state's argument does not recognize that after Mr. Freeman's first appeal, he had the right to petition the Illinois Supreme Court and the United States Supreme Court for review of that decision. We have already recognized that failure of appellate counsel to raise an issue in an appeal as of right can amount to ineffective assistance of appellate counsel if, *inter alia*, it deprives the defendant of the opportunity to raise the matter in a later discretionary appeal. *United States ex rel. Barnard v. Lane*, 819 F.2d 798, 805 (7th Cir.

---

3. *Accord Bromley v. Crisp*, 561 F.2d 1351, 1354 (10th Cir.1977), *cert. denied*, 435 U.S. 908, 98

S.Ct. 1458, 55 L.Ed.2d 499 (1978); *Owsley v. Peyton*, 352 F.2d 804, 805 (4th Cir.1965).

1987). Assuming Mr. Freeman had raised the issue on direct appeal, collateral review in the Illinois courts would have been precluded by the state's res judicata rules. He then could have sought federal review of the issue in a habeas corpus petition. As our colleagues in the Eleventh Circuit have recognized, failure of appellate counsel to preserve on direct appeal matters that will be deemed meritorious on collateral review constitutes cause under the analysis of *Wainwright. See Orazio v. Dugger,* 876 F.2d 1508, 1513–14 (11th Cir. 1989). In short, we do not believe that counsel's performance can be justified simply because the issue to be preserved may not be vindicated until later stages of the appellate process. Even if counsel will not—or need not [4]—accompany the defendant on his entire appellate journey, he may not strip the client of his only viable argument before leaving the scene. As Judge Wood has written, "[t]he spectrum of counsel's legitimate tactical choices does not include abandoning a client's only defense." *Barnard,* 819 F.2d at 805.

Because appellate defense counsel abandoned a viable federal defense on direct appeal in a situation that can hardly be termed "tactical," the petitioner was deprived of the effective assistance of counsel and has established "cause" for his failure to assert that right on direct appeal under *Wainwright.*

■ We also believe that Mr. Freeman has established prejudice for the purposes of the cause-and-prejudice analysis of *Wainwright v. Sykes,* 433 U.S. at 87, 97 S.Ct. at 2506.[5] As will be discussed more fully below, the prosecutors' repeated statements regarding the uncontradicted state of the evidence constituted a clear Fifth Amendment violation under this court's precedents. Appellate counsel's failure to raise this issue on appeal created a procedural default that limited review of these errors. Counsel's deficient conduct therefore worked to Mr. Freeman's "actual and substantial disadvantage," by limiting his ability to redress those comments that "infect[ed] his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982).

## B. *The Fifth Amendment Issue*

■ The Fifth Amendment to the Constitution guarantees to every criminal de-

---

**4.** While a criminal defendant has a right to counsel in his first appeal as of right, *Ross v. Moffitt,* 417 U.S. 600, 602, 94 S.Ct. 2437, 2440, 41 L.Ed.2d 341 (1974) (citing *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)), the Supreme Court held in *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987), that the right to counsel does not extend to discretionary reviews of convictions or to collateral attacks upon them. *See also United States ex rel. Simmons v. Gramley,* 915 F.2d 1128, 1136–37 (7th Cir.1990).

**5.** In order to prove ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984), Mr. Freeman was required to establish "prejudice," that is that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." It is an open question whether this finding of prejudice would also be sufficient to establish "prejudice" for the purposes of *Wainwright v. Sykes'* cause-and-prejudice analysis. *Murray v. Carrier* is silent on the question, and lower court cases on the issue are mixed. *See Deutscher v. Whitley,* 884 F.2d 1152, 1156 (9th Cir.1989) ("Because actual prejudice is an aspect of ineffective assistance of counsel, a

defendant who proves ineffective assistance [of counsel] need not make any additional showing of prejudice to overcome procedural default."), *vacated on other grounds,* — U.S. —, 111 S.Ct. 1678, 114 L.Ed.2d 73 (1991); *but see Bliss v. Lockhart,* 891 F.2d 1335, 1339 (8th Cir.1989) ("Ineffective assistance of counsel may serve as cause for a procedural default only if it amounts to constitutional ineffectiveness under the standards of *Strickland v. Washington....* Once cause is established, actual prejudice must be shown."); *see also Rodriguez v. Young,* 906 F.2d 1153, 1159 n. 2 (7th Cir.1990) (noting that the issue of whether "prejudice" is an equivalent concept under both standards is unsettled), *cert. denied,* — U.S. —, 111 S.Ct. 698, 112 L.Ed.2d 688 (1991). We need not decide this question here, however. Assuming, *arguendo,* that the standards for prejudice under *Strickland v. Washington.* and *Wainwright v. Sykes* (as interpreted in *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982)) are distinct, we find that the error committed in Mr. Freeman's trial and appeal satisfied independently either standard. *See generally* John C. Jeffries, Jr. & William J. Stuntz, *Ineffective Assistance and Procedural Default in Federal Habeas Corpus,* 57 U.Chi.L.Rev. 679, 684–85 n. 25 (1990).

fendant the right to refuse to testify in his or her defense. As a corollary to this right, the Supreme Court has held that the Fifth Amendment also prohibits a prosecutor from referring to a defendant's refusal to testify. *Griffin v. California,* 380 U.S. 609, 614, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965). A direct statement that the defendant has not testified—the type of reference at issue in *Griffin*—is clearly a constitutional violation. *Id.* Comments by the prosecutor on the state of the evidence that may indirectly refer to the defendant's silence—the type of reference at issue in this case—have not been the subject of direct Supreme Court guidance. As we have already noted, in this area, there is some difference between the precedent of the Illinois courts and this court. Our decisions and those of Illinois disagree about the circumstances in which comments that evidence is uncontradicted impermissibly focus attention on the defendant's decision not to testify. Our cases have recognized that a prosecutor may not comment concerning the uncontradicted nature of the evidence when "it is highly unlikely that anyone other than the defendant could rebut the evidence." *United States v. Di Caro,* 852 F.2d 259, 263 (7th Cir.1988).[6] In this situation "when a prosecutor refers to testimony as uncontradicted where the defendant has elected not to testify and when he is the only person able to dispute the testimony, such reference necessarily focuses the jury's attention on the defendant's failure to testify and constitutes error." *United States v. Buege,* 578 F.2d 187, 188 (7th Cir.), *cert. denied,* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978).

 Illinois cases draw a different conclusion. *See, e.g., People v. Bolden,* 152 Ill.App.3d 631, 105 Ill.Dec. 550, 556–57, 504 N.E.2d 835, 841–42 (1987). "[A] prosecutor's remarks that the State's case stands uncontradicted do not amount to a reference that the defendant has failed to testify," even when "the only one who could contradict the State's evidence is the defendant." *People v. Barrow,* 133 Ill.2d 226, 139 Ill.Dec. 728, 747, 549 N.E.2d 240, 259 (1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3257, 111 L.Ed.2d 767 (1990).[7] Rather, Illi-

---

6. *Accord United States v. Martinez,* 937 F.2d 299, 308–09 (7th Cir.1991) ("The question of whether Martinez could be found at certain places at given times is unlikely to have been known only to Martinez"); *Lindgren v. Lane,* 925 F.2d 198, 203–04 (7th Cir.) (reaffirming the rule stated in *United States v. Buege ), cert. denied,* —— U.S. ——, 112 S.Ct. 105, 116 L.Ed.2d 74 (1991); *United States ex rel. Lee v. Flannigan,* 884 F.2d 945, 954 (7th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3277, 111 L.Ed.2d 786 (1990); *United States v. Hernandez,* 865 F.2d 925, 929 (7th Cir. 1989) (reiterating rule stated in *Di Caro ); United States v. Sblendorio,* 830 F.2d 1382, 1391 (7th Cir.1987) ("We have taken *Griffin* to forbid comment on the defendant's failure to call witnesses, when the only potential witness was the defendant himself."), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988); *United States ex rel. Adkins v. Greer,* 791 F.2d 590, 598 (7th Cir.) ("the defendant was the only person who *could* rebut the evidence to which the state referred") (emphasis in original), *cert. denied,* 479 U.S. 989, 107 S.Ct. 584, 93 L.Ed.2d 586 (1986); *United States ex rel. Burke v. Greer,* 756 F.2d 1295, 1301 (7th Cir.1985) ("No one other than the defendants could have satisfactorily denied or contradicted the government's witnesses."); *United States v. Buege,* 578 F.2d 187, 189 (7th Cir.) ("highly unlikely that at least a portion of the testimony could have been contradicted by anyone other than the defendant"),

*cert. denied,* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978); *United States v. Fearns,* 501 F.2d 486, 490 (7th Cir.1974) ("when a defendant has not testified a prosecutor risks reversal by arguing that evidence is undisputed when that evidence was of a kind that could have been disputed by the defendant if he had chosen to testify"). As the reiteration of this rule in more recent cases demonstrates, the dicta of a panel of this court in *Kurina v. Thieret,* 853 F.2d 1409, 1416 n. 6 (7th Cir.1988), *cert. denied,* 489 U.S. 1085, 109 S.Ct. 1544, 103 L.Ed.2d 848 (1989), relied upon by the state, has never been adopted by this court. That dicta relied upon *United States v. Robinson,* 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), a case dealing with an entirely different situation. In *Robinson,* the defense had argued to the jury that the defendant had been prevented from answering the government's charge. Under these circumstances, the Supreme Court determined that it was not error for the trial court to permit the government to point out that the defendant could have testified and explained the matter. As Judge Eschbach has reminded us, *Robinson* requires that we evaluate the prosecutor's statement in the context in which it was made. *See United States ex rel. Lee v. Flannigan,* 884 F.2d at 954.

7. *Accord People v. Bey,* 51 Ill.2d 262, 281 N.E.2d 638, 641 (1972) ("Defendant introduced no evidence, and in such cases we have held that

nois courts interpret these statements as permissible comments on the state of the evidence, *id.* (citing *People v. Hopkins*, 52 Ill.2d 1, 284 N.E.2d 283, 285–86 (1972)), which will violate the Fifth Amendment only if they were intended or calculated to refer to the defendant's silence (*see People v. Dixon*, 91 Ill.2d 346, 63 Ill.Dec. 442, 444–45, 438 N.E.2d 180, 182–83 (1982) (quoting *Hopkins*, 52 Ill.2d 1, 284 N.E.2d at 285–86)). Thus, in *Barrow* the Illinois Supreme Court refused to find a Fifth Amendment violation grounded solely on the prosecutor's statement that the evidence was uncontradicted. The court held that without more it could not be said "that the purpose and effect of the prosecutor's statements were intended to direct the attention of the jury to the defendant's failure to testify." *Barrow*, 133 Ill.2d 226, 139 Ill.Dec. at 747, 549 N.E.2d at 259. Conversely, in *People v. Escobar*, 77 Ill.App.3d 169, 32 Ill.Dec. 647, 654, 395 N.E.2d 1028, 1035 (1979), the appellate court found that a prosecutor's repeated references to the uncontradicted and undenied state of the evidence violated the Constitution when, in fact, the evidence was not uncontradicted and the defendant was the only person who could make a denial. The court concluded that the entirety of the prosecutor's remarks "in their fair and natural meaning did improperly focus attention on the defendant's silence." *Id.*

In this case, we agree with the district court that the prosecutors' remarks were unconstitutionally impermissible under this court's holdings in *Di Caro* and *Burke*. Indeed, the state does not dispute seriously this contention. The only witness to this crime who was available to testify[8]

was Mr. Crider, who identified Mr. Freeman as his assailant. Realistically, the only person who could satisfactorily rebut this testimony was Mr. Freeman himself. *See Williams v. Lane*, 826 F.2d 654, 665 (7th Cir.1987) (on issue of consent in rape trial: "Only petitioner could possibly have rebutted both Diane's version of what happened after he pulled his car over on the shoulder of the expressway and her testimony that she did not consent."). There was no other witness who could contradict Mr. Crider's identification of the perpetrator.[9] Nor can these strong, repeated references be, by any stretch of the imagination, considered too oblique to implicate the Fifth Amendment guarantees. *Cf. Di Caro*, 852 F.2d at 264 (statements made in attempt to rehabilitate government witness). Rather, the prosecutor's studied rhetoric was a pointed comment on "the defendant's failure to testify to refute the government's case." *Id.*[10]

## C. *Harmless Error*

The district court determined that, in its response to the petition for habeas corpus, the state did not argue whether or not the error was harmless beyond a reasonable doubt. The district court noted that the state had relied on a lengthy quote from the original Illinois Appellate Court opinion describing the attack on Mr. Crider. We agree with the district court that this presentation hardly presented a harmless error issue in adequate fashion. Perhaps the state was attempting to argue, as it does here, that the intensity of the experience riveted the memory of the assailants in Mr. Crider's mind. In any event, even if

---

prosecution statements that the evidence was uncontradicted do not amount to a reference that defendant failed to testify."); *People v. Mills*, 40 Ill.2d 4, 237 N.E.2d 697, 700 (1968) ("a prosecutor [may] comment on the uncontradicted nature of the State's case even where the only person who could have contradicted the State's evidence was the defendant himself"); *People v. Miller*, 120 Ill.App.3d 495, 75 Ill.Dec. 814, 821, 457 N.E.2d 1373, 1380 (1983) ("The prosecutor may comment on the uncontradicted nature of the State's case.").

**8.** *See supra* note 1.

**9.** *Cf. United States v. Martinez*, 937 F.2d 299, 308–09 (7th Cir.1991) ("The question of whether Martinez could be found at certain places at given times is unlikely to have been known only to Martinez").

**10.** We note that, even if one of the prosecutors' statements (such as the suggestion of an alibi defense) conceivably could have been answered by someone other than the defendant, it remains "highly unlikely that at least a portion of the testimony could have been contradicted by anyone other than the defendant." *Buege*, 578 F.2d at 189; *see also Williams*, 826 F.2d at 665.

we were to reach the merits on the issue of harmlessness, we could not accept the state's argument. The state's case was, at bottom, only the identification by the victim. Moreover, that identification was not without significant flaws. There is substantial vagueness in Mr. Crider's initial statement according to his testimony and significant disparity between his account and that of the interviewing officer. Moreover, the in-court identification was preceded by Mr. Crider's viewing two photo arrays. Freeman's picture—and only his picture—appeared in both despite the dangers inherent in any photo array. *See Simmons v. United States*, 390 U.S. 377, 383–84, 88 S.Ct. 967, 970–71, 19 L.Ed.2d 1247 (1968). No lineup was conducted. Under these circumstances, we cannot find the error harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Hanrahan v. Thieret*, 933 F.2d 1328, 1336–37 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 446, 116 L.Ed.2d 464 (1991).

## CONCLUSION

Although Mr. Freeman did not raise the self-incrimination issue on direct appeal we hold that cause and prejudice are present in this case that will excuse this error. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Cause is established by the failure of his counsel on direct appeal to raise and preserve the federal constitutional issue central to his case. Prejudice is established because, as we have pointed out in the foregoing discussion, the point abandoned by counsel was a meritorious one. Indeed, because Mr. Freeman has demonstrated that, under this court's precedents, the prosecutors undoubtedly violated his Fifth Amendment rights when they commented upon the uncontradicted state of the evidence, the judgment of the district court granting the petition for a writ of habeas corpus must be affirmed. Therefore, Mr. Freeman must be released from custody unless he is retried within 120 days of the issuance of the mandate of this court. *See Burke*, 756 F.2d at 1304.

AFFIRMED.

FAIRCHILD, Senior Circuit Judge, concurring.

The Illinois Appellate Court, reviewing Freeman's post conviction proceeding, was "the last state court rendering a judgment in the case." *See Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). The Court did not "clearly and expressly" state that its denial of relief rested on Freeman's failure to raise his Fifth Amendment claim on direct appeal. Accordingly, if the rule pronounced in *Harris* be applied literally, that failure does not bar consideration on federal *habeas* of the Fifth Amendment claim and it would be unnecessary to explain the failure by showing cause and prejudice.

The situation is unusual in that the Appellate Court considered Freeman's Fifth Amendment claim, finding it had no merit, but did so only as a step in its reasoning that Freeman's counsel had not been ineffective. Moreover, the implication is very strong that, having rejected the explanation of failure to raise the claim, the Court was treating the failure as procedural default.

Perhaps in these peculiar circumstances, *Harris* requires no specific, express statement, and the failure to raise the claim on direct appeal would bar consideration on federal *habeas* unless explained by cause and prejudice, as Judge Ripple has ably demonstrated.

I fully agree that cause and prejudice have been established.