MARTINEZ v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:MARTINEZ v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 MARTINEZ v. STATE
2019 OK CR 7
Case Number: PC-2017-322
Decided: 05/09/2019
SALVADOR MARTINEZ, Petitioner v. THE STATE OF OKLAHOMA, Respondent.
Cite as: 2019 OK CR 7, __ __

 

ORDER DENYING MOTION TO SUPPLEMENT
THE RECORD ON APPEAL, AND DENYING
POST-CONVICTION RELIEF

¶1 The Petitioner has appealed to this Court from an order of the District Court of Oklahoma County denying his application for post-conviction relief in Case No. CF-2004-4488. Petitioner has also tendered for filing a motion to supplement the record in this matter with the transcripts of his jury trial and sentencing hearings. The Clerk of this Court is directed to file the tendered motion. Petitioner has not established that those transcripts are a necessary part of the record in this matter. See Rule 5.2(C)(6), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2019). The motion to supplement the record is DENIED.

¶2 Petitioner was sixteen years old when he committed his crimes in Case No. CF-2004-4488. He was convicted by a jury of Murder in the First Degree (Count 1) and Shooting with Intent to Kill (Counts 2 and 3). He was sentenced in accordance with the jury's verdict to life imprisonment on Count 1, and fifteen years imprisonment on each of Counts 2 and 3, with the sentences ordered to run consecutively. Petitioner appealed to this Court and his Judgment and Sentence was affirmed. Martinez v. State, No. F-2006-1027 (Okl.Cr. February 11, 2008)(not for publication).

¶3 Petitioner's arguments in this matter are primarily based upon this Court's decision in Luna v. State, 2016 OK CR 27, 387 P.3d 956, and the United States Supreme Court decisions in Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012)(holding the Eighth Amendment's cruel and unusual punishments clause forbids a sentencing scheme that mandates life in prison without the possibility of parole for all juvenile offenders) and Montgomery v. Louisiana, 577 U.S. ___, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016)(holding Miller announced a new substantive rule of constitutional law that must be applied retroactively in cases on collateral review). The Supreme Court had previously held that the Eighth Amendment's cruel and unusual punishments clause categorically prohibits imposition of life without parole sentences on juvenile offenders who committed non-homicide offenses. Graham v. Florida, 560 U.S. 48, 74, 130 S.Ct. 2011, 2030, 176 L.Ed.2d 825 (2010).

¶4 After the District Court issued its order denying Petitioner's application for post-conviction relief, the United States Court of Appeals for the Tenth Circuit issued its decision in Budder v. Addison, 851 F.3d 1047 (10th Cir.), cert. denied, ___U.S.___, 138 S.Ct. 475, 199 L.Ed.2d 374 (2017). In Budder, the juvenile defendant was convicted of two counts of first degree rape, one count of assault and battery with a deadly weapon, and one count of forcible oral sodomy committed when he was sixteen years old. Id. at 1049. His sentence, as modified by this Court, totaled three life terms plus twenty years all to be served consecutively, making him eligible for parole only after serving 131.75 years in prison.[1] Id. at 1049-50. The Tenth Circuit, viewing the four sentences in the aggregate as though they were one, interpreted Graham and its progeny as applying to "any sentence that denies a juvenile nonhomicide offender a realistic opportunity to obtain release in his or her lifetime, whether or not that sentence bears the specific label 'life without parole.'" Id. at 1057.

¶5 Budder was a federal habeas action brought pursuant to 28 U.S.C. § 2254, under which a federal court may grant relief upon a finding that a state court's ruling was an unreasonable application of federal law as determined by the United States Supreme Court. The Tenth Circuit held it clearly established that Graham applied to offenders with multiple crimes and multiple charges. Budder, 851 F.3d at 1057. However, we do not find it clearly established law, and on the contrary, find it is a question which continues to divide state and federal courts. Missouri, Colorado, Pennsylvania, and Minnesota are among those states that have held that each individual sentence must be analyzed separately under the Eighth Amendment. See Commonwealth v. Foust, 2018 Pa. Super. 39, 180 A.3d 416 (2018); Willbanks v. Dep't of Corr., 522 S.W.3d 238, (Mo.), cert. denied, ___U.S.___, 138 S.Ct. 304, 199 L.Ed.2d 125 (2017); Lucero v. People, 2017 CO 49, 394 P.3d 1128, cert. denied, ___U.S.___, 138 S.Ct. 641, 199 L.Ed.2d 544 (2018); State v. Ali, 895 N.W.2d 237 (Minn. 2017), cert. denied, ___U.S.___, 138 S.Ct. 640, 199 L.Ed.2d 543 (2018). Other state and federal courts have held that the cumulative effect of multiple sentences is the benchmark for compliance with the Eighth Amendment. See Budder, 851 F.3d at 1057, 1059 (holding multiple sentences which, when considered in the aggregate, would have required juvenile defendant to serve 131.75 years prior to parole eligibility for non-homicide offenses, violated the Eighth Amendment); State v. Ramos, 187 Wash. 2d 420, 439, 387 P.3d 650, 660 (2017)("Whether that sentence is for a single crime or an aggregated sentence for multiple crimes, we cannot ignore that the practical result is the same."), cert. denied, ___U.S.___, 138 S.Ct. 467, 199 L.Ed.2d 355 (2017). This Court has an independent duty and authority to interpret decisions of the United States Supreme Court. Brown v. State, 1997 OK CR 1, ¶ 24, 933 P.2d 316, 323 ("While it is true that the Supremacy Clause of the United States Constitution demands that state law yield to federal law, it is also true that neither the federal Supremacy Clause nor any other principle of law requires that this state court's interpretation of federal law give way to a lower federal court's interpretation."). See also Johnson v. Williams, 568 U.S. 289, 305, 133 S.Ct. 1088, 1098, 185 L.Ed. 2d 105 (2013)("But the views of the federal courts of appeals do not bind the California Supreme Court when it decides a federal constitutional question, and disagreeing with the lower federal courts is not the same as ignoring federal law."); Evans v. Thompson, 518 F.3d 1, 8 (1st Cir. 2008)("State courts are not bound by the dictates of the lower federal courts, although they are free to rely on the opinions of such courts when adjudicating federal claims."); Surrick v. Killion, 449 F.3d 520, 535 (3d Cir. 2006)("[D]ecisions of the federal district courts and courts of appeal[s], including those of the Third Circuit Court of Appeals, are not binding on Pennsylvania courts, even when a federal question is involved.")(internal quotation omitted); Freeman v. Lane, 962 F.2d 1252, 1258 (7th Cir. 1992)("In passing on federal constitutional questions, the state courts and the lower federal courts have the same responsibility and occupy the same position; there is a parallelism but not paramountcy for both sets of courts are governed by the same reviewing authority of the Supreme Court.")(internal quotations omitted).

¶6 We also note that Budder involved non-homicide offenses and nowhere in the opinion does it address juvenile homicide offenders. In this case, Martinez was sixteen years old when he and two fellow gang members walked up to a residence and opened fire with a revolver and an assault rifle. While driving away, they fired additional shots at the residence from their vehicle. Two adult women inside were wounded and a nine-year-old boy sleeping on the couch was killed by the gunfire. According to the transcript of his sentencing hearing, Martinez was accused in four previous drive-by shootings and, at the time of the shooting in this case, was wearing a GPS ankle monitor while on pre-trial release concerning one of those prior shootings. If his sentences are considered in the aggregate and his sentences of life in prison plus thirty years constitute one de facto sentence of life without parole, and if Martinez is not found to be incorrigible, one or more of his heinous crimes are likely to be forever erased for purposes of sentencing. This is troubling, because even after Graham, Miller, and Montgomery, "defendants convicted of multiple offenses are not entitled to a 'volume discount' on their aggregate sentence." Foust, 2018 Pa. Super. 39, 180 A.3d at 434. Thus, we hold that where multiple sentences have been imposed, each sentence should be analyzed separately to determine whether it comports with the Eighth Amendment under the Graham/Miller/Montgomery trilogy of cases, rather than considering the cumulative effect of all sentences imposed upon a given defendant.

¶7 Petitioner claims that he is currently scheduled for parole consideration on his life sentence on Count 1 in October of 2042, when he will be 54 years old. He calculates that he will have to serve an additional 25½ years, 85% of his two 15 year sentences, before being eligible for parole on Counts 2 and 3. Petitioner claims he will thus not be eligible for release on parole until he is 79 years old, which he claims is past his life expectancy. Petitioner argues that his consecutive sentences in Case No. CF-2004-4488 constitute a de facto sentence of life without parole for a crime committed as a juvenile and thus, his sentences violate the United States and Oklahoma Constitutions' ban on cruel and unusual punishment, pursuant to Miller and Montgomery. We find that they do not.

¶8 A State is not required to guarantee eventual freedom to a juvenile offender. Graham, 560 U.S. at 74, 130 S.Ct. at 2030; Miller, 567 U.S. at 479, 132 S.Ct. at 2469. Based upon the length of Petitioner's sentences and the current status of the law, we find that Petitioner has some meaningful opportunity to obtain release on parole during his lifetime. Petitioner's post-conviction appeal should be, and is hereby, DENIED.

¶9 Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2019), the MANDATE is ORDERED issued forthwith upon the filing of this decision with the Clerk of this Court.

¶10 IT IS SO ORDERED.

¶11 WITNESS OUR HANDS AND THE SEAL OF THIS COURT this 9th day of May, 2019.

/S/DAVID B. LEWIS, Presiding Judge
Dissent-Writing Attached

/S/DANA KUEHN, Vice Presiding Judge
I dissent and join Judge Lewis

/S/GARY L. LUMPKIN, Judge

/S/ROBERT L. HUDSON, Judge
Special Concur w/writing

/S/SCOTT ROWLAND, Judge

ATTEST:

John D. Hadden
Clerk 

FOOTNOTES

[1] Budder's jury fixed his punishment on the two rape charges at life imprisonment without the possibility of parole, but those sentences were modified on direct appeal to life terms with the possibility of parole.

 LEWIS, PRESIDING JUDGE, DISSENTING:

¶1 I respectfully dissent. The Eighth Amendment, as interpreted in Miller v. Alabama, imposes substantive limitations on a State's permanent imprisonment of juvenile homicide offenders. The majority intends to take the narrowest possible approach to these limitations in as many cases and for as long as possible, until the United States Supreme Court enjoins it to do otherwise. I would grant post-conviction relief according to principles already clearly established in Miller.

¶2 The Court today seeks to avoid Miller's constitutional limitations in two disagreeable ways. The first, and most doubtful, is the contrivance of viewing a series of consecutive sentences without regard to their aggregate effect and probable administration by State corrections officials. The second is the Court's admittedly cunning suggestion that no clearly established federal law is involved in its method, by which the Court hopes to insulate its extreme approach from unwelcome scrutiny in federal habeas proceedings. I part with the majority in my view that Miller logically dictates and clearly establishes enforceable limits on the State's power to punish Petitioner and others like him.

¶3 If consecutive sentences imposed on a juvenile homicide offender, considered in the aggregate, guarantee that the offender will die in prison without any reasonable opportunity to obtain release, the offender's punishment is equivalent to life without parole. Life without parole is a legal punishment for a juvenile homicide offender, but it must either comply with, or yield to, the constitutional limitations established in Miller, even if the conviction and punishment was final when Miller was decided. Montgomery v. Louisiana, 577 U.S. ___, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016) (holding Miller is retroactive to final cases).

¶4 In this case, the aggregate term of imprisonment on these consecutive sentences guarantees that Petitioner will die in prison before he has a reasonable opportunity for release on parole. Considering Petitioner's life expectancy, his current chances of an eventual opportunity to plead for release on parole are at best slim, and, more realistically, none. This life without parole-equivalent punishment, imposed without a finding that Petitioner was an irreparably corrupt or permanently incorrigible juvenile, clearly violates the Eighth Amendment.

¶5 I would remedy this constitutional error practically, inexpensively, and immediately, by affirming the sentence of life imprisonment with the possibility of parole for murder, and modifying the other terms to be served concurrently. Montgomery, 577 U.S. at ___, 136 S.Ct. at 736 (holding that a State may remedy a Miller violation, without re-litigating the sentence, by affording the offender an opportunity for eventual release on parole).

¶6 I am authorized to state that Judge Kuehn joins in this dissenting opinion.

HUDSON, J., SPECIALLY CONCUR:

¶1 I concur in today's Order. I write separately to expand upon the Court's holding that when a juvenile offender is convicted of multiple offenses, each sentence imposed should be analyzed separately under the Eighth Amendment. To hold otherwise would effectively give crimes away. See Pearson v. Ramos, 237 F.3d 881, 886 (7th Cir. 2001) ("[I]t is wrong to treat stacked sanctions as a single sanction. To do so produces the ridiculous consequence of enabling a prisoner, simply by recidivating, to generate a colorable Eighth Amendment claim."); see also O'Neil v. Vermont, 144 U.S. 323, 331, 12 S. Ct. 693, 696-9736 L. Ed. 450 (1892) (observing that "[i]f the penalty were unreasonably severe for a single offense, the constitutional question might be urged; but here the unreasonableness is only in the number of offenses which the respondent has committed."). The "Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence for multiple crimes." Hawkins v. Hargett, 200 F.3d 1279, 1285 n.5 (10th Cir. 1999). "If [Martinez] has subjected himself to a severe penalty, it is simply because he committed a great many [ ] offences." O'Neil, 144 U.S. at 331, 12 S. Ct. at 696-97.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 
 1999 10CIR 1612, 200 F.3d 1279, Hawkins v. Hargett
Cited
Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 2016 OK CR 27, 387 P.3d 956, LUNA v. STATE
Discussed
 1997 OK CR 1, 933 P.2d 316, Brown v. State
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA