**Thomas YANCEY, Petitioner–Appellant,**

v.

**Jerry D. GILMORE, Respondent–Appellee.**

No. 96–1977.

United States Court of Appeals, Seventh Circuit.

Argued March 5, 1997.

Decided May 7, 1997.

Ian Brenson (argued), LaGrange, IL, for Petitioner–Appellant.

Steven R. Splitt (argued), Office of the Attorney General, Criminal Appeals Division, Chicago, IL, for Respondent–Appellee.

Before FLAUM, MANION, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Thomas Yancey, an Illinois inmate who in 1975 was convicted of first degree murder and sentenced to seventy-five to ninety years in prison, appeals the district court's denial of his petition for a writ of habeas corpus. We affirm.

## I.

The facts of the case are outlined in Yancey's direct state appeal, *People v. Yancey*, 57 Ill.App.3d 256, 14 Ill.Dec. 790, 372 N.E.2d 1069 (1978). Briefly, the victim, fifteen-year-old William Wilkerson, was shot in the chest and shown (superficially wounded but alive) by Yancey and his codefendant, Brown, to two juveniles, Dickens and Parks, in the eleventh-floor laundry room of a Chicago Housing Authority building. Brown instructed Dickens and Parks to tie up Wilkerson and stop the elevators between the eleventh and twelfth floors. Yancey and Brown dragged Wilkerson toward the elevator shaft, but he struggled so that, rather than being thrown down the shaft, he was returned to the laundry room. Yancey and Brown then unsuccessfully attempted to kill Wilkerson by placing a broom handle over his neck and stepping on it and by strangling him with a stocking. Wilkerson was eventually killed by one gunshot to the temple and his body thrown down the elevator shaft, where it was later discovered. Yancey and Brown were convicted of murdering Wilkerson by a jury after a trial featuring the testimony of Dickens and Parks. The Appellate Court of Illinois affirmed, and the Supreme Court of Illinois denied leave to appeal. Later, Yancey filed a state post-conviction petition,

which was dismissed. The appeal from that dismissal was dismissed for want of prosecution.

In the district court, Yancey filed *pro se* a petition for a writ of habeas corpus alleging numerous grounds for relief. On appeal, where he is represented by counsel, he has narrowed his contentions to two: that during closing arguments the prosecutor unconstitutionally referred to Yancey's failure to testify on his own behalf, and that Yancey was denied his right to effective cross-examination where the trial court refused to allow evidence of Dickens's and Parks's criminal histories to impeach their credibility.

## II.

Yancey has preserved both of his claims for federal review. There is no question that he has exhausted his state remedies. Further, each of these claims was presented to the Appellate Court of Illinois and the Supreme Court of Illinois on direct review. Although both Yancey and the state have lost copies of Yancey's petition for post-conviction review, the district court gave Yancey the benefit of the doubt on the issue of procedural default and reached the merits of the claims. We believe it immaterial in this case whether Yancey included these claims in his post-conviction petition: *res judicata* would have prevented Yancey from further litigating these claims in the Illinois state courts after the direct review process, but *res judicata* is not a bar to federal habeas review. *See Gomez v. Acevedo*, 106 F.3d 192, 195–96 (7th Cir.1997). Accordingly, Yancey has avoided procedurally defaulting these claims, and they are amenable to federal review.

Under the recently amended § 2254(d), Yancey must show that Illinois's adjudication of his claims:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996). The amended § 2254(d) applies to cases pending on the date of its enactment. *Lindh v. Murphy*, 96 F.3d 856, 867 (7th Cir.1996) (en banc), *cert. granted in part,* —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997). As Yancey does not dispute the state court's factual findings, we discuss only § 2254(d)(1).

### A.

■ Yancey first claims that during closing argument the prosecution unconstitutionally commented on his decision not to testify on his own behalf.

When Yancey was arrested, he gave two separate inculpatory statements, one to John Markham, an investigator for the Chicago Police Department, in the presence of another investigator, and one to Assistant State's Attorney Harry Wilson in Markham's presence. Both Markham and Wilson testified during Yancey's trial that Yancey had admitted to participating in the murder. During closing argument, the prosecution stated:

> Mr. Yancey's statement is he took William Wilkerson up to the 11th floor and he participated in the pushing of that body, pushed that body into that elevator shaft.

> You also heard the testimony of Assistant State's Attorney Harry Wolfson [sic] regarding the statement of Mr. Yancey to the same effect that Investigator Markham testified.

> Those statements, the testimony that you have heard from the witness stand, the testimony of Investigator Markham as to those statements, the fact that they were made, the testimony that you have heard from Assistant State's Attorney Harry Wolfson [sic], the fact that Thomas Yancey made that statement to him—He testified as to what the two defendants told him—and that testimony which you have heard from that witness stand is unrebutted and uncontradicted.

After the defense's objection was overruled, counsel said, "You are here to decide a case based upon the testimony you heard from that witness stand." Yancey asserts that

these comments necessarily focused the jury's attention on Yancey's failure to testify at trial.

As a corollary to a defendant's constitutional right to decline to testify in his own defense, the Supreme Court has held that neither the prosecution nor the court may invite the jury to infer guilt from the defendant's silence. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965); *United States v. Wing*, 104 F.3d 986, 990 (7th Cir.1997). *Griffin* involved a direct comment on the defendant's decision not to testify, but in subsequent cases, this circuit has "repeatedly recognized that indirect commentary on a defendant's failure to take the stand can also constitute a violation of the defendant's Fifth Amendment privilege not to testify." *United States v. Cotnam*, 88 F.3d 487, 497 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 326, 136 L.Ed.2d 240 (1996). Consequently, we have held that prosecutorial characterizations of the government's evidence as "uncontradicted," "undenied," "unrebutted," "undisputed," "unchallenged," or "uncontroverted" violate a defendant's right to silence if the defendant is the only person capable of contradicting, denying, rebutting, disputing, challenging, or controverting the evidence at issue. *See id.* (collecting cases); *Freeman v. Lane*, 962 F.2d 1252, 1260 & n. 6 (7th Cir.1992) (collecting cases); *United States v. DiCaro*, 852 F.2d 259, 263 (7th Cir.1988); *United States v. Buege*, 578 F.2d 187, 188 (7th Cir.1978).

Yancey relies heavily on this circuit precedent to support his constitutional claim, but under the new § 2254(d) it is "clearly established Federal law, as determined by the Supreme Court of the United States," not the circuit courts of appeals, that controls. We may no longer rely upon our own precedent to grant a writ of habeas corpus. *Liegakos v. Cooke*, 106 F.3d 1381, 1388 (7th Cir.1997); *Lindh*, 96 F.3d at 869. The question, then, is whether a decision of the Supreme Court had clearly established, as of Yancey's direct appeal, that indirect references to a defendant's failure to testify, in some circumstances, violate the Fifth Amendment.

The only Supreme Court case that arguably supports Yancey's claim is *Griffin*,

which specifically held that "the Fifth Amendment ... in its bearing on the States by reason of the Fourteenth Amendment forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." 380 U.S. at 615, 85 S.Ct. at 1233. Although the Appellate Court of Illinois did not cite *Griffin* in disposing of Yancey's appeal, it did cite state-court opinions for the proposition that "[c]ommenting upon the unrebutted and uncontradicted nature of testimony is considered a permissible summary of the evidence." *See Yancey*, 14 Ill.Dec. at 795, 372 N.E.2d at 1074. This Illinois rule, though it differs from the holdings of this circuit, is not "contrary to" Supreme Court precedent, for, as we noted above, *Griffin* involved only direct comment upon the accused's decision not to testify. *See Freeman*, 962 F.2d at 1260 ("Comments by the prosecutor on the state of the evidence that may indirectly refer to the defendant's silence ... have not been the subject of direct Supreme Court guidance."). Indeed, *People v. Hopkins*, the Illinois Supreme Court decision the appellate court relied on in Yancey's case, correctly cited *Griffin* to this effect: "by the Federal constitution ... the court and the prosecutor are forbidden from making any direct reference to a defendant's failure to testify." 52 Ill.2d 1, 284 N.E.2d 283, 285 (1972) (citing *Griffin*; *People v. Burton*, 44 Ill.2d 53, 254 N.E.2d 527 (1969)).

Nor can the appellate court's decision in Yancey's case be described as an unreasonable application of relevant law. The "unreasonable application" prong of § 2254(d)(1) speaks to the state court's handling of mixed questions of law and fact. *See Lindh*, 96 F.3d at 870. Here, the Illinois court concluded that *Griffin* did not even apply under the circumstances of this case. We have explained why this conclusion was not contrary

to any holding of the Supreme Court. If the state court's failure to apply *Griffin* was not grounds for relief, it follows that there can be no relief premised on a misapplication of *Griffin*. In short, without a Supreme Court case to support his claim, Yancey cannot satisfy the requirements of § 2254(d)(1).[1]

**B.**

Yancey also claims that the trial court violated his Sixth Amendment right to effective cross-examination (an essential part of the right to confront witnesses) when it refused to allow him to impeach the credibility of the two juvenile accomplice witnesses, Dickens and Parks, by introducing evidence of their criminal histories. Dickens and Parks, who took part in the series of events culminating in Wilkerson's death, were the main prosecution witnesses. They also had histories of offenses, including failure to return to a juvenile detention facility, armed robbery, and burglary. *Yancey*, 14 Ill.Dec. at 792, 372 N.E.2d at 1071.

Does "clearly established Federal law" entitle a defendant to use a juvenile witness's criminal history to impeach that witness's general credibility? In *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), the Supreme Court established that the Sixth Amendment requires the admission of evidence concerning juvenile offenses that helps elucidate the "witness' motivation in testifying." *Davis* was reaffirmed in *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). *See also Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (per curiam). Yancey's case, however, involves not impeachment with specific evidence of bias—the issue in *Davis, Van Arsdall*, and *Olden*—but the

---

1. It is not apparent that Yancey's Fifth Amendment argument would prevail even under this circuit's caselaw (i.e., under pre-AEDPA standards). Yancey complains about the prosecutor's characterization of the testimony Markham and Wilson gave regarding Yancey's inculpatory statements. Yet, because there were at least two witnesses besides Yancey present during each post-arrest statement, the prosecutor's reference to that testimony as "unrebutted" and "uncon-

tradicted" did not necessarily draw the jury's attention to Yancey's silence. This distinguishes Yancey's case from the precedent on which he relies, because our cases emphasize that it is the fact that the defendant is the only one who can rebut or contradict the testimony that makes the prosecutor's arguments improper. *See generally Freeman*, 962 F.2d at 1260 & n. 6 (collecting cases).

general use of extrinsic evidence to impeach a witness's credibility.

We do not believe that Yancey's argument is supported by "clearly established" Supreme Court jurisprudence. Recently, we noted that "although the Supreme Court has frequently held that states must permit cross-examination that will undermine a witness's testimony, it has never held—or even suggested—that the longstanding rules restricting the use of specific instances and extrinsic evidence to impeach a witness's credibility · pose constitutional problems." *Hogan v. Hanks,* 97 F.3d 189, 191 (7th Cir. 1996) (internal citations omitted), *cert. denied,* —— U.S. ——, 117 S.Ct. 1439, 137 L.Ed.2d 546 (1997). Additionally, when the Court in *Davis* distinguished general attacks on the credibility of a witness from a particular attack on possible biases, it held only the latter constitutionally impermissible, 415 U.S. at 316, 94 S.Ct. at 1110. Further, in *Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435, it held that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *See also Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) ("[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."); *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973) (Confrontation and cross-examination rights "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."). Because Yancey cannot point to clearly established Supreme Court precedent for his argument, he does not meet the standard for relief imposed by the amended § 2254.

This conclusion holds if we ask whether the state decision was an unreasonable application of clearly established federal law. When the Appellate Court of Illinois rendered its decision in 1978, it had only the benefit of *Davis.* Though it did not refer to *Davis* by name, the court clearly articulated the *Davis* rationale. It specifically held that the limitation imposed by the Illinois Juvenile Court Act "does not preclude access to the juvenile records for impeaching the credibility of a juvenile witness by showing 'a possible motive for testifying falsely,'" *Yancey,* 14 Ill.Dec. at 795, 372 N.E.2d at 1074, and that the defendant had "ample opportunity" to establish such bias. *Id.* The state court's decision fell within the parameters imposed by *Davis* and consequently did not involve an unreasonable application of federal constitutional law. *See Hennon v. Cooper,* 109 F.3d 330, 335 (7th Cir.1997); *Lindh,* 96 F.3d at 871, 877.

Even were we to disregard the 1996 amendments and evaluate the claim under the old law, we would be disinclined to grant Yancey relief. Yancey complains that he was unable to explore Dickens's and Parks's criminal pasts thoroughly, but in fact he introduced a good deal of evidence about the two juveniles. The appellate opinion noted, "Andrew Dickens, 17 years old at the time of the trial, testified that he was then confined at St. Charles, Illinois, for escaping from the Illinois Youth Center at Hanna City, Illinois, where he had been confined for armed robbery." *Yancey,* 14 Ill.Dec. at 792, 372 N.E.2d at 1071. About Demetrius Parks the court wrote, "On cross-examination the witness stated he had been sent to Hanna City for burglary and that a warrant had been issued for his arrest at the time of the murder because he failed to return to Hanna City after his furlough expired. He stated he was brought to the courtroom that day from the Audy Home where he was confined for not returning to Hanna City." *Id.* Additionally, it was apparent from Dickens's and Parks's testimony that they had participated in the murder, allowing the jury to infer they possessed less-than-sterling character. In light of the evidence presented, it is unlikely the restrictions on cross-examination (even assuming they violated Yancey's constitutional rights) had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson,* 507 U.S. 619, 627, 638, 113 S.Ct. 1710, 1716, 1722, 123 L.Ed.2d 353 (1993), the standard applied to

Confrontation Clause claims in habeas corpus actions. *Miles v. Burris,* 54 F.3d 284, 287 (7th Cir.1995); *Tague v. Richards,* 3 F.3d 1133, 1140 (7th Cir.1993).

AFFIRMED.