In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-1079

MATTHEW C. STECHAUNER,

*Petitioner-Appellant,*

*v.*

JUDY P. SMITH, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:08-cv-000607-CNC — **C.N. Clevert, Jr.,** *Judge.*

ARGUED JANUARY 11, 2017 — DECIDED MARCH 31, 2017

Before BAUER, FLAUM, and EASTERBROOK, *Circuit Judges.*

FLAUM, *Circuit Judge.* Matthew Stechauner seeks habeas relief from his Wisconsin convictions for second-degree reckless homicide and armed robbery. He argues that the Wisconsin appeals court unreasonably denied post-conviction relief despite alleged *Miranda* violations and ineffective assistance of counsel. The district court declined to hold an evidentiary hearing and denied Stechauner's petition for habeas relief. For the following reasons, we affirm.

## I. Background

On November 22, 2004, Stechauner was riding in a car with friends. An unmarked police cruiser pulled up behind the car, and Stechauner tried to hide his sawed-off shotgun from view. In the process, the gun accidentally fired and hit Stechauner in the leg, and he was driven to the hospital.

Stechauner received treatment for the gunshot wound.[1] In the process of tending to Stechauner, one of the nurses noticed a bag of bullets in Stechauner's pocket, and so called the police. Officer Guajardo went to the hospital but could not locate the bullets. Then, at about 7:15 PM, Detective Kolatski arrived, followed later by Sergeant Doney. Officer Guajardo was in full police uniform; Detective Kolatski and Sergeant Doney apparently were not. The officers entered Stechauner's hospital room, where he was awaiting discharge but still dressed in a hospital gown. Stechauner's mother also arrived at the hospital but was denied access to Stechauner's room. (However, there is no indication that Stechauner was aware at that time that his mother was trying to see him.) Detective Kolatski later testified that he had the following exchange with Stechauner in the hospital room:

> … I told [Stechauner] that in order for me to help him out at all that he needed to tell me the entire truth including about where the bullets were. … I explained to him that … we realized that he hadn't left the room, there were no visitors, and that the bullets were either in the room someplace or he had possibly ingested them.

---

[1] The report of Stechauner's hospital visit stated that he received a dose of "Dialudin" around 6:30 PM, and a prescription for Vicodin.

> And that shortly thereafter Mr. Stechauner bent
> over on the gurney and pulled … the bag of bul-
> lets out from what I believe to be his rectum.

Stechauner had then explained to the officers that he had shot himself with the sawed-off shotgun in a car, and that he had a probation officer. When Detective Kolatski asked Stechauner what had happened to the gun, Stechauner answered that it was being kept at a friend's house. Stechauner then called the friend from the hospital to arrange for the gun to be dropped off in a trash container close to the house. The questioning lasted about ninety minutes, during which time Stechauner "seemed lucid, and … was able to answer … questions." Stechauner was not given *Miranda* warnings at the hospital. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

Around 8:00 or 8:30 PM, Stechauner was discharged from the hospital. He left on crutches with the officers, was placed in handcuffs, and got into Officer Guajardo's cruiser, with Detective Kolatski following behind. Stechauner directed the officers to the place where he believed the gun was located, but the officers were unable to find the gun in the trash bins near Stechauner's friend's house. Around that time, the friend arrived and he and Stechauner got into a heated discussion, with Stechauner still seated inside the cruiser and the friend on the other side of the cruiser door. After the exchange, either Stechauner or the friend (neither party knows which) told the officers that the gun was actually hidden under the steps leading up to the friend's house. Officer Guajardo found the gun and gave it to Detective Kolatski. Kolatski then tried to remove a casing lodged inside the gun but had trouble doing so. Seeing Detective Kolatski struggle, Stechauner shouted out that one had to use pliers to remove the casing.

Officer Guajardo also heard Stechauner's instructions and re-called that she had found a pair of pliers in Stechauner's coat when she had been searching for the bag of bullets in the hospital. She gave Detective Kolatski the pliers, who then removed the casing. As of this point, Stechauner still had not received any *Miranda* warnings.

While handling the sawed-off shotgun, Detective Kolatski developed a hunch that Stechauner may have been involved in a recent string of robberies and other crimes carried out using such a weapon. Detective Kolatski said that he wanted to bring Stechauner in for further questioning. Around 9:00 PM, Stechauner went with Detective Kolatski to the station, where Stechauner was formally arrested. Several hours later, starting around 2:00 AM the following day, Stechauner was given *Miranda* warnings and was interrogated by two other officers. Over the course of the next nine hours, Stechauner admitted to several crimes, some tied to the sawed-off shotgun.

Based on Stechauner's confession, the State charged Stechauner with first-degree reckless homicide as party to a crime;[2] "two counts of 'armed robbery, use of force' as party to a crime"; personal robbery; and possession of a firearm by a felon. Stechauner pleaded not guilty and moved to suppress his hospital statements, cruiser statements, and the sawed-off shotgun.

---

[2] In Wisconsin, "[w]hoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although the person did not directly commit it. …" Wis. Stat. § 939.05. Such a defendant is called a "party to a crime." *Id.*

The trial court held a suppression hearing at which Stechauner, Detective Kolatski, and other law enforcement officials testified. Kolatski testified that Stechauner had not been in custody at the hospital, had been free to leave, had seemed lucid and able to answer questions, and never had been placed in handcuffs in the hospital room. Regarding the cruiser statements, Kolatski said that Stechauner had "indicated where the alley was where the gun was supposed to be hidden" and had "yelled out to [Kolatski] when [Stechauner] saw [Kolatski] struggling … to get the casing out."

In contrast, Stechauner testified that he had been intoxicated upon arriving at the hospital from a combination of alcohol, marijuana, sleeping pills, and ecstasy; that the officers had handcuffed him to the hospital bed; that the officers had told Stechauner's mother that he was already under arrest at the hospital; and that the hospital had given him three Vicodin, which he had taken before leaving. Relevant to this appeal, Stechauner's trial counsel did not call several witnesses. According to Stechauner, these witnesses included Stechauner's mother, who would have testified that Stechauner had been in custody in the hospital; several friends, who would have said that Stechauner had been intoxicated before the accidental shooting; and the treating physician and nurse, who would have testified that he had been handcuffed to the hospital bed. Trial counsel also did not introduce the hospital report of Stechauner's treatment.

The trial court denied Stechauner's motion to suppress. The court credited Detective Kolatski's testimony and discredited Stechauner's, finding that Stechauner had not been restrained in any way in the hospital, and had not been in custody, such that *Miranda*'s warning requirement had not been

triggered. The court ruled the hospital statements were admissible. The trial court then found that Stechauner had been in custody once in handcuffs and in the squad car. However, the court determined that Stechauner's statements regarding the shotgun had all been volunteered and were not the result of custodial interrogation. The court found no *Miranda* violation with respect to these statements and admitted them, as well. The court also admitted the shotgun.

Stechauner later pleaded no contest to second-degree reckless homicide as party to a crime, and armed robbery as party to a crime. The other counts were dismissed but considered for sentencing purposes. Stechauner was sentenced to a total of twenty-five years of confinement and fifteen years of extended supervision.

Stechauner moved for post-conviction relief in the trial court, arguing that the court should have suppressed the inculpatory statements made in the hospital and in the police cruiser. The court denied that motion, and Stechauner, represented by new counsel, appealed. In this first state-court appeal, Stechauner argued that both the hospital and cruiser statements had been taken in violation of *Miranda*, but did not argue that his trial counsel had been ineffective for not calling the friendly witnesses and for not introducing the hospital report. The Wisconsin Court of Appeals affirmed the trial court, *State v. Stechauner*, No. 2006AP1923-CR, 731 N.W.2d 384 (unpublished table decision), 2007 WL 901536 (Wis. Ct. App. Mar. 27, 2007), and the Wisconsin Supreme Court declined review, *State v. Stechauner*, No. 2006AP1923-CR, 741 N.W.2d 241 (unpublished table decision) (Wis. July 17, 2007).

On July 14, 2007, Stechauner filed his petition for a writ of habeas corpus with the district court under the Antiterrorism

and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), and raised five grounds for relief. The trial court's screening order eliminated two of those grounds, leaving the following: (1) that the state trial court had admitted Stechauner's statements and shotgun in violation of *Miranda*, (2) that Stechauner had received ineffective assistance of appellate counsel due to appellate counsel's failure to argue that trial counsel had been ineffective at the suppression hearing, and (3) that Stechauner's plea had been involuntary. Noting that Stechauner had failed to exhaust grounds (2) and (3) in the state courts, the district court administratively closed the habeas petition to give Stechauner a chance to exhaust them.

Stechauner then filed a second motion for post-conviction relief in state court, raising the three remaining issues mentioned above. *See* Wis. Stat. § 974.06. The state trial court denied relief, and the Wisconsin Court of Appeals affirmed. *State v. Stechauner*, No. 2009AP2367, 795 N.W.2d 62 (unpublished table decision), 2010 WL 4945103 (Wis. Ct. App. Dec. 7, 2010). The appellate court rejected Stechauner's *Miranda* arguments on the ground that it had already disposed of them in his first motion for post-conviction relief. Because Stechauner had failed to raise the two other arguments in the first post-conviction motion, they were barred unless Stechauner could demonstrate good cause for having failed to raise them. *See* Wis. Stat. § 974.06(4). The court reasoned that post-conviction counsel's alleged ineffectiveness in failing to raise these issues would have been sufficient reason to excuse their earlier absence. The court then applied the *Strickland* standard for effective assistance of counsel and rejected the arguments. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The court determined that none of the proposed witnesses actually would have aided Stechauner's suppression

arguments, and dismissed the hospital-record argument as meritless or underdeveloped. The court concluded that Stechauner had not suffered any prejudice from these alleged errors and thus had received effective assistance of counsel. The Wisconsin Supreme Court again declined review. *State v. Stechauner*, No. 2009AP2367, 797 N.W.2d 524 (unpublished table decision) (Wis. Apr. 12, 2011).

On June 15, 2011, the district court reopened Stechauner's case. Stechauner presented the three grounds for relief and requested an evidentiary hearing. The district court denied habeas relief and the request for a hearing, but granted a certificate of appealability on the *Miranda* and *Strickland* issues.[3]

## II. Discussion

We review de novo the district court's denial of habeas corpus relief. *Harris v. Thompson*, 698 F.3d 609, 622 (7th Cir. 2012) (citation omitted). When a state court has reviewed a petitioner's claim on the merits and denied relief, a habeas petition may be granted only if the state court's ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under this deferential standard, the state court's ruling stands unless "there is no possibility fairminded jurists could disagree" that it conflicts with Supreme Court precedent. *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

---

[3] The district court declined to issue a certificate of appealability on the ground that Stechauner's plea had been involuntary, and Stechauner does not pursue this issue on appeal.

"The operative decision under review is that of the last state court to address a given claim on the merits." *Harris*, 698 F.3d at 623 (citing *Greene v. Fisher*, 565 U.S. 40, 132 S. Ct. 38, 45 (2011); *Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006)). In this case, there are two operative decisions: (1) the Wisconsin appellate court's March 27, 2007, decision denying relief on the *Miranda* claims (*Stechauner I*); and (2) the appellate court's December 7, 2010, decision denying relief on the ineffective-assistance claims (*Stechauner II*).

**A. *Miranda* Warnings**

Under *Miranda v. Arizona*, the government may not use in a prosecution any "statements" that "stemm[ed] from custodial interrogation of the defendant" unless the government has first given the familiar *Miranda* warnings and the defendant has voluntarily waived his rights. 384 U.S. at 444–45. This warning requirement obtains when the defendant is interrogated *while* in custody.

Police interrogation includes both express questioning and "words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 303 (1980). A person is "in custody" for *Miranda* purposes when one's "freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (citation and internal quotation marks omitted). Custody is an objective, totality-of-the-circumstances test: whether "a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (citation and internal brackets and quotation marks omitted); *see also Florida v. Bostick*, 501 U.S. 429, 436 (1991). Factors to consider in assessing custody

"include the location of the questioning, its duration, state-
ments made during the interview, the presence or absence of
physical restraints during the questioning, and the release of
the interviewee at the end of the questioning." *Howes*, 565 U.S.
at 509 (citations omitted). Because custody is determined by
an objective standard, the subjective beliefs of the suspect and
police officers are irrelevant. *Stansbury v. California*, 511 U.S.
318, 323–26 (1994).

The trial court heard testimony from Stechauner and De-
tective Kolatski about the hospital-room interrogation. The
trial court discounted the former's testimony and credited the
latter's.[4] According to that testimony, the circumstances of the
hospital interrogation were as follows: The officers arrived at
the request of the treating nurse—not Stechauner—to investi-
gate the shooting and bag of bullets. Stechauner was at the
hospital because he had shot himself and wanted medical at-
tention. The questioning took place in a hospital room (the
record does not indicate the room's size) over the course of
about ninety minutes, while Stechauner was lying in his hos-
pital bed in a gown and connected to an intravenous drip.
Stechauner appeared awake and lucid, and had already been
treated for the gunshot wound. Stechauner resisted answer-
ing some of the questions about who else had been in the car
when the gun had gone off, but generally answered questions
about where the gun was. There were up to three officers in
the room at a time, and one of them was in full police uniform.

---

[4] Stechauner does not argue that the trial court erred in crediting De-
tective Kolatski's account of the interrogation. *See* 28 U.S.C. § 2254(e)(1)
("[A] determination of a factual issue made by a State court shall be pre-
sumed to be correct. The applicant shall have the burden of rebutting the
presumption of correctness by clear and convincing evidence.").

Though the officers did not use physical restraints at the hospital, they also did not mention either that Stechauner was not under arrest or that he was free to end the conversation. After the questioning, Stechauner walked out on crutches with the officers and was then placed in handcuffs and into the cruiser.

After hearing this testimony, the trial court concluded, "I don't find any factual circumstances which would indicate that while [Stechauner] was at St. Francis Hospital he was in custody." The *Stechauner I* court affirmed:

> The police testified that Stechauner was not in custody at the hospital, that he was not handcuffed or restrained in any way, and that he was not considered a suspect at that time. Stechauner contradicted that testimony, claiming he was handcuffed and believed he was in custody. In reviewing the trial court's findings, we conclude that they are not clearly erroneous. The testimony of the police supports the trial court's findings that Stechauner was not in custody when he spoke with police at the hospital.

2007 WL 901536, at *3.

On these facts, reasonable jurists could conclude that Stechauner was not in custody at the hospital. Though some of the interrogation circumstances suggest that Stechauner's freedom of movement was restricted, the duration of the questioning was relatively short, Stechauner was not placed in handcuffs or other restraints, and there is no indication of coercion, deception, or use of force on the part of the police. As the Fourth Circuit noted in assessing a similar hospital-questioning case, there has been no police custody when a suspect

"was primarily restrained not by the might of the police, but by his self-inflicted gunshot wound [and] the medical exigencies it created." *United States v. Jamison*, 509 F.3d 623, 632 (4th Cir. 2007).[5]

Stechauner also claims that the *Stechauner I* court impermissibly relied on Detective Kolatski's subjective belief that Stechauner had not been in custody. Stechauner is correct that an officer's subjective beliefs are irrelevant to the custody analysis, *see Stansbury*, 511 U.S. at 323–26. However, the Wisconsin appellate court does not appear to have relied on such considerations here. While the state court noted that "[t]he police testified that Stechauner was not in custody at the hospital … and that he was not considered a suspect at that time," 2007 WL 901536, at *3, simply mentioning how police officers testified does not amount to relying on their subjective beliefs. The officers' testimonies addressed much more than their respective beliefs and included details about the timing of the investigation, questions that the officers had asked Stechauner, locations of the interrogations, and many other non-subjective facts on which the state courts relied in concluding that Stechauner had not been in custody at the hospital.

Stechauner next argues that he should have received *Miranda* warnings once he had been placed in the police cruiser. Thus, Stechauner claims that two of his statements should have been suppressed: (1) his statement revealing the location

---

[5] *Jamison* is partly distinguishable: While the defendant in that case initiated a police investigation by telling officers he had been shot by someone else, *see* 409 F.3d at 625, here, Stechauner did not want the police to be involved. This difference, however, is not dispositive in a totality-of-the-circumstances analysis.

of the gun—assuming he, and not his friend, made that state-
ment—and (2) Stechauner's advice to Detective Kolatski to
use pliers to get the casing out of the shotgun. On this issue,
the *Stechauner I* court held:

> [The trial court] found that the statement as to
> the location of the gun was provided after the
> confrontation between Stechauner and [his
> friend]. The trial court indicated that this state-
> ment was not provided as a result of police in-
> terrogation or questioning. Further, the trial
> court found that the statement Stechauner made
> about how to remove the casing was a volun-
> tary statement he made after he saw the detec-
> tive struggling to remove the casing. This state-
> ment, too, was not the product of police interro-
> gation. The detective did not ask Stechauner
> how to remove the casing; rather, Stechauner,
> on his own, shouted out this information to the
> officer. Again, these findings are not clearly er-
> roneous as the testimony of the police at the
> suppression hearing supports the trial court's
> findings.

2007 WL 901536, at *3.

The record indicates that the police did not expressly ques-
tion Stechauner once he was in custody in the cruiser. Fur-
thermore, neither the heated conversation between Stec-
hauner and his friend nor Detective Kolatski's attempt to re-
move the casing from the shotgun meets the *Innis* standard
for interrogation. 446 U.S. at 302 (interrogation includes con-
duct that a police officer "*should have known* w[as] reasonably
likely to elicit an incriminating response"). First, the exchange

between Stechauner and his friend was not police interrogation because it included no "words or actions *on the part of police officers*." *Id.* (emphasis added). Second, there is no reason that a police officer in Detective Kolatski's position should have known that trying to take a shell casing from a gun would be reasonably likely to elicit an incriminating response from Stechauner. *See id.* The state courts did not unreasonably apply Supreme Court precedent in finding that Stechauner had been in custody but had not been interrogated while in the police cruiser, or in declining to suppress his statements.

### B. Voluntariness

Stechauner also argues that his statements should have been suppressed because they were given involuntarily. The *Stechauner I* court held on this issue:

> Stechauner makes various assertions, claiming he was drowsy, under the influence, and coerced by the police during the interrogation. There is nothing in the record to support Stechauner's assertions, except his own testimony, which the trial court found to be incredible. The record reflects that Stechauner's statements were voluntary and were the product of free and unconstrained will, not due to police pressure.

2007 WL 901536, at \*5. Stechauner argues on appeal that his statements were involuntary because Kolatski had impermissibly promised to help him and because of the medication Stechauner had received at the hospital.

As an initial matter, respondent-appellee argues that this Court ought not to consider this issue at all, since, she claims,

the district court did not grant a certificate of appealability on the voluntariness question. *See Rittenhouse v. Battles*, 263 F.3d 689, 693 (7th Cir. 2001) ("In accordance with 28 U.S.C. § 2253(c), a habeas petitioner may appeal only those issues for which a certificate of appealability has been granted.") (citation omitted). Stechauner responds that the district court's certificate of appealability on the *Miranda* issue did include the voluntariness question, entitling him to appeal on this ground. The certificate of appealability does not specifically mention voluntariness with respect to the hospital or crusier statements.[6] Regardless of the scope of the district court's certificate of appealability, however, "we … consider requests to amend a certificate of appealability even when they are presented in a petitioner's briefs to this court," which can be done "by simply including issues in [the] briefs that were not specified in the certificate." *Id.* (citations and internal quotation marks omitted). To receive a certificate of appealability, generally a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The admission of a defendant's involuntarily-made statements at a later criminal proceeding offends due process. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). "In determining whether a defendant's will was overborne in a particular case, the Court … assesse[s] the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). However, "coercive police activity is a

---

[6] The order clearly rejected Stechauner's earlier contention that his *plea* was involuntary, though that point was separate from the question of whether Stechauner's statements were involuntary.

necessary predicate to the finding that a confession is not 'voluntary.'" *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

First, Stechauner argues that the "narcotic pain medicine … *likely would have* rendered Stechauner more susceptible to coercive interrogation tactics utilized by the officers here [and] … *may have* interfered with Stechauner['s] free will and ability to understand questions, *potentially* rendering any statements made after he received the drugs … involuntary." (emphases added). Yet Stechauner refers to no specific "coercive interrogation tactic" the officers supposedly used in this case. He does not argue, for example, that the police administered the drugs, or that he was given drugs against his will. Second, speculation about how the narcotics "may have" "potentially" contributed to involuntariness is insufficient to show a denial of Stechauner's constitutional rights. Simply taking pain medication administered by a hospital does not involve coercive *police* activity. *See Connelly*, 479 U.S. at 167.

Next, Stechauner argues that his statements were involuntary because, he says, Detective Kolatski impermissibly promised him leniency in exchange for cooperating in the investigation. Stechauner is correct that a confession is involuntary if prompted by "direct or implied promises, however slight." *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 347 (1963) (quoting *Bram v. United States*, 168 U.S. 532, 542–43 (1897)). However, Stechauner misreads the record in making this argument. During the suppression hearing, Kolatski testified:

> A: I informed [Stechauner] that I [Kolatski] was aware of the fact that when the nurse initially began treating him that she had discovered a baggy containing three or four bullets and … [t]hey could no longer be found. And I told

> [Stechauner] that in order for me to help him out at all that he needed to tell me the entire truth including about where the bullets were.
>
> Q: And when you meant help him out, what did you mean by that?
>
> A: At that point in time as far as I knew he was shot … . And in order for me to conduct a thorough investigation which somebody may be able to be prosecuted for shooting him, I needed the entire truth.

This testimony does not demonstrate that Kolatski was offering Stechauner leniency or making any other promise. At that time, there was no indication that Stechauner was considered a suspect of any particular crime for which Detective Kolatski could offer leniency. Kolatski simply wanted to know where the bullets were so he could investigate the incident. Kolatski's statements did not amount to coercive conduct sufficient to have overcome Stechauner's will. In short, the hospital interrogation lacked the "necessary predicate" of coercive police activity required to render Stechauner's statements involuntary. *Connelly*, 479 U.S. at 167.

### C. Ineffective Assistance

The Supreme Court recently rearticulated the standard for demonstrating ineffective assistance of counsel:

> The Sixth Amendment right to counsel is the right to the effective assistance of counsel. A defendant who claims to have been denied effective assistance must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice.

> *Strickland*'s first prong sets a high bar. … The
> lawyer has discharged his constitutional re-
> sponsibility so long as his decisions fall within
> the wide range of professionally competent as-
> sistance. It is only when the lawyer's errors were
> so serious that counsel was not functioning as
> the "counsel" guaranteed by the Sixth Amend-
> ment that *Strickland*'s first prong is satisfied.
>
> …
>
> To satisfy *Strickland*, a litigant must also demon-
> strate prejudice—a reasonable probability that,
> but for counsel's unprofessional errors, the re-
> sult of the proceeding would have been differ-
> ent.

*Buck v. Davis*, 137 S. Ct. 759, 775–76 (2017) (citations, altera-
tion, and internal quotation marks omitted). On collateral re-
view, this Court does not assess directly whether trial counsel
provided ineffective assistance under *Strickland*; rather, we
ask "whether there is any reasonable argument that counsel
satisfied *Strickland'*s deferential standard." *Harrington*, 562
U.S. at 105.

Stechauner did not argue in his first motion for post-con-
viction relief that his trial counsel had been ineffective at the
suppression hearing. In his second motion, Stechauner ar-
gued that his post-conviction counsel had been ineffective for
having failed to raise trial counsel's allegedly ineffective per-
formance as a ground for post-conviction relief. The *Stec-
hauner II* court noted that, while claims not raised in the first
motion for post-conviction relief typically would be barred,

> Ineffective assistance of a postconviction lawyer
> may constitute a sufficient reason for a second
> postconviction proceeding. When a defendant
> claims that a postconviction lawyer was ineffec-
> tive by failing to challenge a trial lawyer's al-
> leged ineffectiveness, however, the defendant
> must establish that the trial lawyer's assistance
> was, in fact, ineffective.

2010 WL 4945103, at *2 (citations omitted). Stechauner argued
before the state court that his trial counsel had provided inef-
fective assistance by failing to call eight witnesses at the sup-
pression hearing: Stechauner's mother, the treating nurse and
physician, and several friends. Stechauner says that these wit-
nesses would have corroborated his ultimately-discredited
testimony that he had been intoxicated on the day in question
and that he was in custody at the hospital.

The state court disagreed and concluded that trial counsel
had not been ineffective at the suppression hearing:

> Stechauner fails to show how [his mother's] tes-
> timony could have assisted the circuit court to
> determine his custodial status in the hospital,
> given that [she] had no contact with him while
> he was hospitalized. Thus, Stechauner did not
> satisfy his burden of showing how [her] testi-
> mony would have altered the outcome of the
> proceeding.

> Stechauner names seven people in addition to
> his mother who he claims should have testified
> at the suppression hearing, and he faults his

> first trial lawyer for failing to call them as wit-
> nesses. He offers no support for his conclusory
> assertions that the people he names would have
> provided any relevant information about his
> custodial status. Therefore, the circuit court
> properly rejected the allegations.

2010 WL 4945103, at *4 (footnote, citations, and internal quo-
tation marks omitted). Thus, the *Stechauner II* court appears to
have denied relief under *Strickland* because, even assuming
trial counsel's performance was deficient, there was no preju-
dice from the failure to call the witnesses. To determine
whether the state court reasonably concluded that there was
no "reasonable probability that, but for counsel's" failure to
call the witnesses, "the result of the proceeding would have
been different," *Buck*, 137 S. Ct. at 775, we must revisit the
merits of Stechauner's *Miranda* claims.

As mentioned above, for a statement to warrant suppres-
sion at trial, it must have been the product of custodial inter-
rogation and been made before the suspect has waived his or
her *Miranda* rights. The trial court here declined to suppress
any of Stechauner's statements, finding that Stechauner had
not been in custody at the hospital and that the cruiser state-
ments had not been the product of police interrogation but
rather had been volunteered.

It is undisputed that the questioning in the hospital room
constituted police interrogation under *Miranda*. Thus, to have
demonstrated prejudice in state court, Stechauner needed to
show only that the missing testimony likely would have
changed the custody analysis. However, under current Su-
preme Court precedent, the *Stechauner II* court was not unrea-
sonable in determining that the absence of Stechauner's

mother's and friends' testimonies did not prejudice Stechauner. First, Stechauner does not argue that any of these proposed witnesses were in the hospital room or had any knowledge of the circumstances of the interrogation. Nor does he allege that he was aware of his mother's attempts to see him at the hospital at the time he was speaking with the police officers. *Cf. Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("Counsel for Alvarado alleges that Alvarado's parents asked to be present at the interview but were rebuffed, a fact that—*if known to Alvarado*—might reasonably have led someone in Alvarado's position to feel more restricted than otherwise.") (emphasis added). Thus, the witnesses' testimonies would not have been helpful in determining custody under the objective standard articulated above. Second, assuming Stechauner's friends would have testified as he claims—that he had used several substances earlier in the day—this testimony likely would not have changed the state court's custody analysis. Stechauner did not and does not argue that the police gave him any intoxicating substances or that they knowingly took advantage of Stechauner's allegedly intoxicated state. Prior voluntary intoxication does not bear on the objective custody analysis and so would not have created a reasonable probability of a different outcome.

This leaves us with the purported testimonies of the nurse and doctor. Stechauner claims that these individuals would have testified that he had been handcuffed to the hospital bed. However, as the state court noted, Stechauner has never introduced, at any stage of the proceedings of this case, any indication that these two proposed witnesses would have testified in the manner he claims. Without more, Stechauner's assertions about what these witnesses said are merely conclusory, and as such are insufficient to demonstrate prejudice or to

show that Stechauner actually was in custody in the hospital. Thus, the *Stechauner II* court was not unreasonable in determining that Stechauner suffered no prejudice from these two witnesses' absence from the suppression hearing.

Stechauner next argues that trial counsel was ineffective for not introducing the hospital record at that hearing. However, again, Stechauner cannot show prejudice from this omission. He claims that "[t]he fact that the hospital—an objective third-party—determined that Stechauner was in police custody is compelling evidence that a reasonable person would have believed Stechauner was not free to leave." Even setting aside that hospital staff do not make legal determinations, Stechauner also misreads the record on this point. In fact, the hospital report states: "Patient *will be* discharged in police custody," and "[p]atient was discharged in police custody in good condition." (emphasis added). These statements, if true, suggest only that hospital staff believed Stechauner had been in custody upon discharge from the hospital—a fact at all times conceded by respondent-appellee—and not that he had been in custody while at the hospital. The hospital record provides no help to Stechauner's prejudice argument.

Stechauner also argues that the hospital record indicates that he had been under the influence of drugs during treatment for his gunshot wound. As an initial matter, he cites to no authority for the proposition that voluntarily taking drugs impacts a *Miranda* custody analysis. Even if such facts were pertinent to the custody question, the document does not support Stechauner's argument that he had taken Vicodin prior to the interrogation; rather, the record states: "Patient discharged with prescription(s) for Keflex Vicodin." This does not indicate that he had taken Vicodin prior to the hospital-

room questioning, and so would not have likely altered the custody analysis. In his reply brief, Stechauner mentions that the hospital record reflects that he had been given Dilaudid intravenously around 6:30 PM, several minutes before the officers had arrived, and asserts that this drug affected the voluntariness of his hospital statements. Arguments raised for the first time in a reply brief are waived. *Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014) (citation omitted).

In sum, Stechauner has not offered any new information that likely would have altered the state court's *Miranda* analysis. As a result, the *Stechauner II* court reasonably applied *Strickland* in concluding that Stechauner suffered no prejudice as a result of the omitted witness testimony and hospital record. Because Stechauner cannot show prejudice, we need not determine whether his trial counsel's performance was deficient.

### D. Evidentiary Hearing

Lastly, Stechauner argues that the district court abused its discretion when it denied his request for an evidentiary hearing. *See Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). Stechauner wanted to call several witnesses, including Detective Kolatski and Stechauner's state-court counsel. As discussed in *Pinholster*, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 181. In other words, no federal evidentiary hearing is permitted when the state court has already addressed the issue; rather, "the record under review is limited to … the record before the state court." *Id.* at 182.

*Pinholster* bars Stechauner's request, since his claims were adjudicated on the merits by the *Stechauner I* and *Stechauner II*

courts. However, he now argues that under our decision in *Mosley v. Atchison*, 689 F.3d 838 (7th Cir. 2012), the district court's denial of an evidentiary hearing constituted an abuse of discretion. However, *Mosley* did not alter—and could not have altered—the holding of *Pinholster*. We noted in *Mosley* that "[t]he district court had to make [the ineffective-assistance] decision based on the record before the state courts," *id.* at 841 (citing *Pinholster*, 563 U.S. at 181; 28 U.S.C. § 2254(d)), and reasoned "If § 2254(d) *does not bar* relief, then an evidentiary hearing may be needed," *id.* at 844 (citing *Pinholster*, 563 U.S. at 205–06 (Breyer, J., concurring in part and dissenting in part)) (emphasis added). In *Mosley*, the district court held, and this Court agreed, that § 2254(d) did not bar relief, and so further hearings into the veracity of certain affidavits were needed *before* granting the habeas petition. Here, the district court clearly held that § 2254(d) barred relief, and therefore no additional hearing was permitted. We agree and likewise conclude that a straightforward application of *Pinholster* precludes an additional evidentiary hearing in this case.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.